# STATE OF VERMONT

SUPERIOR COURT
ENVIRONMENTAL DIVISION
Docket No. 151-11-17 Vtec

In Re: Snowstone, LLC Act 250 Jurisdictional Opinion (#2-308)

## ENTRY REGARDING MOTION

Appeal from Act 250 Jurisdictional Opinion (JO #2-308) (151-11-17 Vtec)

Title:         Motion for Entry of Final Judgment Order Joint (Motion 12)

Filer:         Snowstone, LLC

Attorney:      Lawrence G. Slason

Filed Date:    February 4, 2020

Response in Opposition filed on 02/04/2020 by Attorney Merrill E. Bent for Intervenors Bruce and Linda Watson, Izzet and Sandy Haci, James and Kim Bergeron, Edward and Ellen Beatty, Kern and Svetlana Phillips, Paul Hogan, James and Maryellen Wichelhaus, Teresa Harrington, Daniel and Judy Massey, Joseph Calzone, Marcia Packlick, and Jack Munson
Reply filed on 02/18/2020 by Attorney Lawrence G. Slason for Appellant Snowstone, LLC

**The motion is GRANTED.**

The Court began a merits hearing concerning this de novo appeal on May 17, 2018.[1] However, the Court suspended the merits hearing after Appellant Snowstone, LLC ("Snowstone") completed its evidentiary case-in-chief, but before the Neighbors[2] had an opportunity to present any evidence.  This somewhat unique procedure was suggested by the parties.

This appeal is governed by the two Questions posed by Snowstone in its Statement of Questions.  By those Questions, Snowstone challenged the initial determination of the District 2 Environmental Commission Coordinator ("District Coordinator") that the land to be used for Snowstone's dimensional stone extraction, constituting 0.93 acres, should be considered as "involved land" with the neighbors' remaining lands and therefore subject to Act 250 jurisdiction.[3]

---

[1] The Court also conducted a site visit with the parties on May 11, 2018.

[2] The following area residents expressed concerns about the proposed project and therefore entered their appearance as Interested Persons; they have been assisted in Snowstone's appeal by their attorney, Merrill E. Bent, Esq.: Bruce and Linda Watson, Izzet and Sandy Haci, Kim and James Bergeron, Ellen and Edward Beatty, Kern Svetlana Phillips, Paul Hogan, Maryellen and James Wichelhaus, Teresa Harrington, Judy and Dan Massey, Joe Calzone, Marcia Packlick, and Jack Munson.  These Interested Persons are hereinafter referred to as "the Neighbors."

[3] Justin and Maureen Savage are the neighbors from whom Snowstone purchased the 0.93-acre parcel; they retained approximately 175± acres of land, upon which they have constructed their single-family home.  The

The merits hearing was suspended at the completion of Snowstone's case-in-chief, when the Neighbors advised that they did not have any evidence to present to contest Snowstone's representations that its revised land purchase contract with the Savages was, in fact, an arms-length transaction and therefore should not be considered as "involved land," separate and apart from the Savages remaining lands. Neighbors also advised that they did not have evidence to contest Snowstone's assertion that it and the Savages had no ownership or control of each other and therefore should not be regarded as a single entity for purposes of Act 250 jurisdictional analysis. *See* In re Snowstone, No. 151-11-17 Vtec slip op. at 3 (Interim Order) (Vt. Super. Ct. Envtl. Div. June 14, 2018) (Durkin, J.) (hereinafter referred to as the "Interim Order")

Those two legal issues were the sum and substance of the challenges that Snowstone raised in its Statement of Questions. *See* Snowstone Statement of Questions, filed December 6, 2017.[4] However, the Neighbors expressed concerns about whether Snowstone actually could confine its dimensional stone extraction operations to the 0.63-acre site and 0.29-acre access road, particularly if Snowstone were required to address certain stormwater runoff and permitting issues. Therefore, the Court, at the parties' recommendation, suspended the merits hearing in this appeal to allow for Snowstone to apply for and receive any applicable stormwater permits. *See* Interim Order at 4–5. The Court established a briefing schedule and advised that it would bifurcate its merits decision into two parts, the first to address the legal issues of whether the proposed project triggered Act 250 jurisdiction, under the concept of an "arm's-length transaction" and whether Snowstone and the Savages should be regarded as the same "person." Id. at 4.

The Court went on in its Interim Order, again at the parties' recommendation, to direct that Snowstone "shall promptly make application to the Vermont Agency of Natural Resources or its subdivisions, including the Department of Environmental Conservation, for all stormwater and discharge permits required for the proposed quarrying operation" and to advise the Court "within ten (10) calendar days" of any withdrawal or decision on such application Id. at 4–5.

The Court then directed that any party shall have thirty days from the date of any ANR decision to:

> [M]ake a request that the Court conduct a further hearing on whether any stormwater permit determination has a relevancy to the legal issue of whether all activities necessary for the operation of the proposed quarry can occur within the 0.93± acres that Snowstone proposes to purchase. In the event that such a request is made, the Court will schedule a further hearing.

> Id. at 5.

The further hearing would enable the Court to receive evidence on the second part of its bifurcated review: that is, to determine whether the Snowstone dimensional stone extraction operation, and any necessary stormwater collection and treatment activities, could be conducted within the 0.93 acres that Snowstone intended to purchase. This legal issue was relevant to the

---

Savages were granted Intervenor status and are represented by Attorney David R. Cooper, Esq. *See* In re Snowstone, Nos. 151-11-17 Vtec & 76-7-19 Vtec, (Entry Order on Intervention Motion) (Vt. Super. Ct. Envtl. Div. Jan. 28, 2020) (Durkin, J.)

[4] Snowstone is the sole appellant in this appeal.

question of whether Snowstone would be required to obtain an Act 250 permit for its operations. *See* 10 V.S.A. § 6081(a) (requiring an Act 250 permit prior to the commencement of "development") and 10 V.S.A. § 6001(3)(A)(ii) (defining "development" as the "construction of improvements for commercial or industrial purposes on more than one acre of land within a municipality that has not adopted permanent zoning and subdivision bylaws.").[5]

After receiving the parties' briefs, the Court issued its Merits Decision on Initial Bifurcated Issues. *See* In re Snowstone, No. 151-11-17 Vtec (Vt. Super. Ct. Envtl. Div. Nov. 27, 2018) (Durkin, J.). In response to a motion to alter that Decision, the Court issued its Revised Merits Decision on Initial Bifurcated Issues. *See* In re Snowstone, No. 151-11-17 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 21, 2019) (Durkin, J.) (hereinafter referred to as "Revised Merits Decision"). In that Revised Merits Decision, the Court concluded that the doctrine of "involved land" was not applicable to the Snowstone and Savage properties and that their land purchase and sale contract was an arm's length transaction. Id. at 12–16. Thus, the Court concluded that Act 250 jurisdiction was not triggered by Snowstone's planned activities, assuming that Snowstone could operate within the 0.93-acre parcel.

The Court then went on to repeat its procedural directives from the Interim Order, so that it could complete the merits decision and issue a full judgment order. Revised Merits Decision at 16–17. Specifically, the Court directed that:

> 6.    Within thirty (30) days of such [ANR] determination or [application] withdrawal, any Party to this jurisdictional opinion appeal may request that the Court conduct a further hearing on whether any stormwater permit determination has a relevancy to the legal issue of whether all activities necessary for the operation of the proposed dimensional stone quarry can occur within the 0.93 acres that Snowstone proposes to purchase. In the event that such a request is made, the Court will schedule a further hearing.

> Id. at 17.

The Court then advised that if no party requested a further hearing within 30 days, no further hearing would be held and that "this Court will [then] issue a final entry of judgment." Id.

The Department of Environmental Conservation ("DEC"), a subdivision of ANR, completed its review of Snowstone's application for approval of its stormwater treatment plans. That application included Snowstone's proposed stormwater pollution prevention plan and the best management practices that it would follow during its dimensional stone extraction operation.[6] Those plans provided that any stormwater treatment activities would be conducted within the confines of Snowstone's 0.93-acre parcel.

In response, DEC solicited public comments, in response to which the Neighbors filed thirty-five questions and comments concerning Snowstone's stormwater application. DEC

---

[5] The Town of Cavendish has not adopted permanent zoning and subdivision bylaws. Therefore, the "one-acre rule" applies to lands within that Town.

[6] The Court's understands that an application for authority to act under an MSG permit is not a permit that specifically directs how stormwater is to be collected or treated for a specific project. Rather, an MSG Permit authorization directs that the operators of a certain project abide by the terms and conditions of a general permit.

addressed each of the Neighbors' questions and comments and, after the comment period was closed, DEC on June 12, 2019, issued to Snowstone an "Authorization to Discharge Stormwater under Multi-Sector General Permit 3-9003" (hereinafter referred to as "MSG Permit"). Under the MSG Permit, Snowstone is authorized to discharge stormwater from its project site under the terms and conditions of its application and "[s]ubject to the conditions and eligibility provisions of General Permit No. 3-9003 . . . ." MSG Permit at 1.[7]

By July 13, 2019, no party to this Jurisdictional Opinion appeal (Docket No. 151-11-17 Vtec) had filed a request that this Court "conduct a further hearing on whether any stormwater permit determination has a relevancy to the legal issue of whether all activities necessary for the operation of the proposed dimensional stone quarry can occur within the 0.93 acres that Snowstone proposes to purchase," as directed by this Court in its Revised Merits Decision. *See* Revised Merits Decision at 17.

However, the Neighbors did file a new appeal, this time from the MSG permit itself; that appeal was captioned and docketed as In re Snowstone, LLC SW Discharge Appeal, No. 76-7-19 Vtec.

In response to the pending motion, Neighbors assert that by filing their Motion to Consolidate in both of the pending Snowstone appeals, they "did request a further hearing in the Snowstone jurisdictional opinion appeal." Neighbors' Opposition to Joint Motion for Entry of Final Judgment Order at 1, filed Feb. 4, 2020. However, after having reviewed the Neighbors' Motion to Consolidate, we find no specific request that the Court conduct a further hearing . For the purpose of providing adequate notice to this Court and the other parties to the Jurisdictional Opinion appeal, Neighbors were required to file some type of notice requesting the continuation of the May 17, 2018 merits hearing. When the motion to consolidate was filed, this Court did not read it as a request for a further hearing, as directed by the Interim Order, and we conclude that we cannot now regard it as a notice sufficient to satisfy the notice requirement this Court established in both the Interim Order and the Revised Merits Decision. Furthermore, we note that the Neighbors filed their Motion to Consolidate on July 26, 2019, well beyond 30 days after the issuance of the MSG Permit on June 12, 2019. *See* Revised Merits Decision at 17 ("Within thirty (30) days of such determination . . . any Party . . . may request that the Court conduct a further hearing . . . .").

A further procedural note that supports our determination here is that the Neighbors' appeal of the MSG Permit is no longer pending before this Court. By Entry Order issued in response to Snowstone's motion to dismiss Neighbors' Statement of Questions, this Court concluded that Neighbors had not provided a factual foundation for this Court to conclude that a "particularized interest" of theirs could possibly be impacted by Snowstone's proposed operation, and that the Neighbors therefore "lack[ed] the requisite standing to maintain this [stormwater discharge] appeal." In re Snowstone, LLC SW Discharge Appeal, No. 76-7-19 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jan. 28, 2020) (Durkin, J.). Based upon that conclusion, we

---

[7] A copy of the MSG Permit issued by DEC on June 12, 2019 was attached as Exhibit A to the Neighbors' Notice of Appeal from the MSG Permit in Docket No. 76-7-19 Vtec. .

granted Snowstone's motion to dismiss the Neighbors' Statement of Questions and dismissed their appeal.[8] Id. at 9. Neighbors have appealed that dismissal to the Vermont Supreme Court.

We therefore conclude that there has been no timely request to conduct a further hearing in the Jurisdictional Opinion appeal and no appeal is currently pending before this Court concerning the MSG permit appeal. With no request for a further evidentiary hearing, we conclude that the evidence presented supports Snowstone's assertion that its planned dimensional stone extraction operation will be entirely conducted within the boundaries of the 0.93-acre parcel it has purchased or plans to purchase from Mr. and Mrs. Savage. For the foregoing reasons, and based upon our conclusions in the Revised Merits Decision, we therefore further conclude that the evidence presented in this appeal from the District Coordinator's Jurisdictional Opinion requires us to **VACATE** the District Coordinator's determination and enter our own jurisdictional opinion determination that Snowstone's planned operation, as detailed in the evidence presented, is not subject to Act 250 jurisdiction.

This completes the current proceedings before this Court in this appeal. A Judgment Order accompanies this Entry Order.

**So Ordered.**

Electronically signed on June 30, 2020 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

Notifications:

Lawrence G. Slason (ERN 2443) and Samantha Snow (ERN 6873), Attorney for Appellant Snowstone, LLC
Merrill E. Bent (ERN 5013), Attorney for Intervenors Bruce and Linda Watson, Izzet and Sandy Haci, James and Kim Bergeron, Edward and Ellen Beatty, Kern and Svetlana Phillips, Paul Hogan, James and Maryellen Wichelhaus, Teresa Harrington, Daniel and Judy Massey, Joseph Calzone, Marcia Packlick, and Jack Munson
Gregory J. Boulbol (ERN 1712), Attorney for the Vermont Natural Resources Board
David R. Cooper (ERN 4756), Attorney for Intervenors Justin and Maureen Savage
Barry J. Polidor (ERN 1193), Attorney for Windsor County Properties, LLC (FYI purposes only)
Vermont Agency of Natural Resources (FYI purposes only)

---

[8] Four of the Neighbors' Questions, namely Questions 23–25 and 27, were dismissed for other reasons. *See* Snowstone, LLC SW Discharge Appeal, No. 76-7-19 Vtec, slip op. at 7–9 (Vt. Super. Ct. Envtl. Div. Jan. 28, 2020) (Durkin, J.).